IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| DAN WHITFIELD and GARY FULTS, ) <br> ......Plaintiffs ) <br> ) <br> v.   ) <br> ) <br> JOHN THURSTON, in his official capacity as ) <br> Secretary of State for the State of Arkansas, ) <br> .....Defendant.) | Case No. 4:20-cv-466-KGB |

PLAINTIFFS' BRIEF IN SUPPORT OF THEIR COMPLAINT
AND MOTION FOR PRELIMINARY INJUNCTION

I. STATEMENT OF THE CASE

The instant case is a ballot access and election law case on behalf of two registered Arkansas voters and Independent candidates for the 2020 Arkansas general election ballot who must successfully complete a petition drive for Independent candidate recognition under Arkansas law--which has been made very much more difficult by the effects of the coronavirus on petitioning. The Plaintiffs are asking in the case at bar that they be permitted to finish a petition drive for independent ballot status with a petition signature requirement of no more than twenty to thirty percent (20-30%) of the number of now required petition signatures of registered Arkansas voters along with a later petition signature deadline and a longer petition collection period for the general election to be conducted on November 3, 2020. Because of the continuing problem created by the coronavirus for petitioning, Plaintiffs would suggest to the Court that it would be better to decrease the number of petition signatures required for Independent candidates for the 2020 general election in Arkansas, rather than moving at this time the petitioning deadline further in the future and/or extending the petitioning period beyond 90 days because of the uncertainty involving future developments.

The facts and witnesses which will be presented to the Court at the hearing on Plaintiffs' Motion for Preliminary Injunction will show the effects of the coronavirus on the Plaintiffs' petition drives (see the Declarations of Dan Whitfield and Gary Fults, Plaintiffs' Exhibits "1" and "2" attached to Plaintiffs' motion for preliminary injunction, respectively). Under the circumstances existing this year particularly, requiring an excessive and unnecessary number of valid petition signatures of registered Arkansas voters which must be collected during a ninety day period, and with a petition signature deadline of no later than May 1, 2020, at 12:00 noon--which is long before the general election ballot needs to be printed, is unconstitutional in its application to Plaintiffs.

The laws in question effective for the 2020 Arkansas general election cycle are as follows, to-wit:

Ark. Code Ann. § 7-7-101

The name of no person shall be printed on the ballot in any general or special election in this state as a candidate for election to any office unless the person shall have been certified as a nominee selected pursuant to this subchapter.

Ark. Code Ann. §7-7-103

(a)(1) A person desiring to have his or her name placed upon the ballot as an independent candidate without political party affiliation for any United States office other than President of the United States or Vice President of the United States or state, county, township, or district office in any general election in this state shall file, during the party filing period for the year in which the election is to be held, a political practices pledge, an affidavit of eligibility, and a notice of candidacy stating the name and title the candidate proposes to appear on the ballot and identifying the elective office sought, including the position number, if any.

(2)(A) An independent candidate shall state the same position, including the position number, if any, on his or her petition.

(B) When a candidate has identified the position sought on the notice of candidacy, the candidate shall not be allowed to change the position but may withdraw a notice of candidacy and file a new notice of candidacy designating a different position before the deadline for filing.

  (b)(1)(A) The person shall furnish by 12:00 noon on May 1 of the year in which the general election is to be held petitions signed by not less than three percent (3%) of the qualified electors in the county, township, or district in which the person is seeking office, but in no event shall more than two thousand (2,000) signatures be required for a district, county, or township office.

  (B) If the person is a candidate for state office or for United States Senator in which a statewide race is required, the person shall file petitions signed by not less than three percent (3%) of the qualified electors of the state or which contain ten thousand (10,000) signatures of qualified electors, whichever is the lesser.

  (2) Each elector signing the petition shall be a registered voter, and the petition shall be directed to the official with whom the person is required by law to file the petition to qualify as a candidate and shall request that the name of the person be placed on the ballot for election to the office mentioned in the petition.

  (3) Petitions shall be circulated not earlier than ninety (90) calendar days before the deadline for filing petitions to qualify as an independent candidate unless the number of days is reduced by a proclamation, ordinance, resolution, order, or other authorized document for a special election under 7-11-101, *et seq.*

  (4) In determining the number of qualified electors in any county, township, or district or in the state, the total number of votes cast therein for all candidates in the preceding general election for the office of Governor shall be conclusive of the number of qualified electors therein for the purposes of this section.

  (5) If the number of days in which the petition for independent candidacy may be circulated is reduced by a proclamation, ordinance, resolution, order, or other authorized document for a special election under 7-11-101, et seq., the number of signatures required on the petition shall be reduced proportionately.

  Ark. Code Ann., § 7-7-203(c)(1)

  (c)(1) The party filing period shall be a one-week period beginning and ending on the following dates and times:

  (A) For years in which the office of Governor will appear on the ballot at the general election, beginning at 12:00 noon one (1) week prior to the first day in March and ending at 12:00 noon on the first day in March; and

  (B) For years in which the office of President of the United State [sic] will appear on the ballot at the general election, beginning at 12:00 noon on the first Monday in November preceding the general primary election and ending at 12:00 noon on the seventh day thereafter.

## II. STANDARD OF REVIEW

In deciding whether or not to grant Plaintiffs' Motion for Preliminary Injunction filed herein, the trial court must consider both the standard of review to be applied in a preliminary injunction request as well as the standard of review required in evaluating ballot access and election laws. The standard of review to be used in judging whether or not Plaintiffs are entitled to a preliminary injunction requires that the Plaintiffs demonstrate and the Court consider (1) the threat of irreparable harm to the movant; (2) the movant's likelihood of success on the merits; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) issuance of the proposed preliminary injunction would not be adverse to the public interest. *Kroupa v. Neilsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). "Preliminary injunctive relief is an extraordinary remedy, and the party seeking such relief bears the burden of establishing the four *Dataphase* factors." *Libertarian Party of Arkansas v. Thurston*, 394 F.Supp.3d 882, 903 (E.D. Ark. 2019), citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). However, the Eighth Circuit revised the *Dataphase* test when applied to challenges to laws passed through the democratic process. Those laws are entitled to a "higher degree of deference." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). "Only if the movant has demonstrated that it is likely to prevail on the merits should the Court consider the remaining factors." *Libertarian Party of Arkansas v. Thurston*, 394 F.Supp.3d at 903 (citing *Planned Parenthood Minn., N.D., S.D. v. Rounds, Id*).

As to the standard of review in a ballot access and election law case, the analytical test applied by the U.S. Supreme Court in *Anderson v. Celebrezze*, 406 U.S. 780 (1983), is appropriate. In *Anderson* the U.S. Supreme Court set forth a standard to be used in determining whether election

4

laws are unconstitutionally oppressive of potential voter's rights. The Supreme Court held that such constitutional challenges to specific provisions of a state's election laws cannot be resolved by litmus-paper tests that will separate valid from invalid restrictions, but rather that the trial court " ... must resolve such a challenge by an analytical process that parallels its work in ordinary litigation." *Anderson v. Celebrezze*, 406 U.S., at 789; also see *Moore v. Martin*, 854 F.3d 1021, 1025 (8th Cir. 2017). The Supreme Court then set forth three criteria which the trial court is expected to follow:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the Plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rules. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the Plaintiffs rights. [quoted with approval by the Eighth Circuit in *Moore v. Martin, Id.*] Only after weighing all these facts is the reviewing Court in a position to decide whether the challenged provision is unconstitutional. *Anderson v. Celebrezze*, 460 U.S., at 789.

As the United States Court of Appeals for the Eighth Circuit has also stated:

> [W]e review the statute under a form of strict scrutiny referred to as the "compelling state interest test" by first determining whether the challenged statute causes a burden of some substance on a plaintiff's rights, and if so, upholding the statute only if it is "narrowly drawn to serve a compelling state interest." *Libertarian Party of N.D. v. Jaeger*, 659 F.3d 687, 693 (8th Cir. 2011) (quoting *McLain v. Meier*, 851 F.2d 1045, 1049 (8th Cir. 1988)). In such cases, the State bears the burden of showing that the challenged statute is narrowly drawn to serve the State's compelling interest. See *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 222, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989)." *Moore v. Martin*, 854 F.3d at 1026.

Thus, both the U. S. Supreme Court and the Eighth Circuit have set forth the standard which the trial court is to use in analyzing specific provisions of ballot access laws as are involved in the instant action. In fact, " ... because the interests of minor parties and independent candidates are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decision-making may warrant more careful judicial scrutiny."

*Anderson v. Celebrezze*, 460 U.S., at 793, n.16. After all, "the State may not be a 'wholly independent or neutral arbiter' as it is controlled by the political parties in power, 'which presumably have an incentive to shape the rules of the electoral game to their own benefit.'" *Clingman v. Beaver*, 544 U.S. 581, 603 (2005) (O'Conner, J., concurring). Since the case at bar involves election laws that burden Independent candidates and their supporters, and the corresponding constitutional right of individuals to political expression and association, the appropriate standard of review which is required for this Court is strict scrutiny, so that state laws cannot stand unless they "further compelling state interests . . . that cannot be served equally well in significantly less burdensome ways." *American Party of Texas v. White*, 415 U.S. 767, at 780-781 (1974).

> As both the U.S. Supreme Court and the Eighth Circuit have recognized:
>
> It is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. * * *
>
> "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates and—of particular importance—against those voters whose political preferences lie outside the existing political parties . . . . By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity in competition in the marketplace of ideas. Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs; many other challenges to the status quo have in time made their way into the political mainstream. . . . In short, the primary values protected by the First Amendment—"a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, at 270 (1964)—are served when election campaigns are not monopolized by the existing political parties." *Anderson v. Celebrezze*, 460 U.S. at 793-794.

Therefore, the first consideration this Court must look to is the character and magnitude of the asserted injury to the Plaintiffs' First and Fourteenth Amendment rights. Since in the instant

case the injury to the rights of the Plaintiffs would impact their candidacies and their supporters in their petitioning for ballot access for the Arkansas ballot, there cannot be a dispute in the least that the damage would be substantial and of a fundamental nature. When election deadlines are far in advance of an election, they force Independent candidates or minor parties to recruit candidates at a time when major party candidates are not known and when voters are not politically engaged. See *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 594 (6th Cir. 2006) and *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879-881 (3rd Cir. 1997). As the U.S. Court of Appeals for the Eighth Circuit has stated: ". . . it is important that voters be permitted to express their support for independent and new party candidates during the time of the major parties' campaigning and for some time after the selection of candidates by party primary." *McLain v. Meier*, 637 F.2d 1159, at 1164 (8th Circuit 1980).

The next step the Court must look to under the *Anderson* test is the identification and evaluation of the precise interests put forth by the State of Arkansas as justifications for the burden imposed by the laws in question. While Arkansas does have a right to properly supervise elections, election restrictions which impact Independent candidates and their supporters must be necessary to serve a compelling state interest. The teaching of the United States Supreme Court is that:

> "even when pursuing a legitimate interest, a state may not choose means that **unnecessarily restrict** constitutionally protected liberty," *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973), and we have required that states adopt the **least drastic means** to achieve their ends. *Lubin v. Panish*, [415 U.S. 709, 716 (1974)]; *Williams v. Rhodes*, 393 U.S. [23, at 31-33 (1968).] **This requirement is particularly important where restrictions on access to the ballot are involved.** [Emphasis added]. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, at 185 (1979).

III. ARGUMENT AND AUTHORITIES

Currently, an Independent candidate for the 2020 general election in Arkansas had to file a political practices pledge, an affidavit of eligibility, and a notice of candidacy stating the name

and title the candidate proposes to appear on the ballot and identifying the elective office sought during the party filing period. Ark. Code Ann., §§ 7-7-103(a)(1) and (2)(A). The party filing period (which for the Republican and Democratic parties determines who has chosen to submit themselves to be party candidates in the preferential primary election) was set for the 2020 election cycle for a one-week period beginning at noon on the first Monday in November preceding the General Primary Election (viz.: November 4, 2019) and ending at noon on the 7th day thereafter (viz.: November 11, 2019). The new petition deadline for Independent candidates in Arkansas has been moved several times in recent years, and is now May 1, 2020, at 12:00 noon. See *Moore v. Martin*, No. 4:14-cv-00065-JM, 2018 WL 10320761 (E.D. Ark., W.Div., Jan. 31, 2018)(declaring the Independent petition deadline of March 1 unconstitutional after remand); and *Moore v. Thurston*, 928 F.3d 753, 758-759 (8th Cir. 2019) (dismissing appeal as moot because of amended law but allowing the District Court judgment to stand and not vacating it because of the public interest being best served by a substantial body of judicial precedents). The May 1 deadline requires Independent candidates to conduct a petition drive slightly more than nine to six months before the general election, not to mention that an Independent candidate will have to decide which office to run for in early November of 2019, almost one year before the general election. There is no reason or necessity for Independent candidates in Arkansas to have to decide approximately one year before the general election what office they are going to run for and then petition before the nominees of political parties are even known.

Besides the foregoing considerations, this Court should note that in order to respect social distancing guidelines implemented in response to the COVID-19 pandemic, numerous state and federal courts have reduced the number of signatures required for a candidate to be placed on the ballot or taken other steps. See, e.g., *Libertarian Party of Illinois v. Pritzker*, No. 20-CV-2112

8

(N.D. Ill., E.Div., Apr. 23, 2020)(reducing the statutory requirement to 10% of the normal requirement because the Plaintiffs could not rely on their usual signature-gathering methods); *Esshaki v. Whitmer*, No. 2:20-CV-1083-TGB, 2020 WL 1910154, at *12 (E.D. Mich. Apr. 20, 2020) (reducing the statutory signature requirement by 50 percent); *Goldstein v. Sec'y of Commonwealth*, No. SJC-12931, 2020 WL 1903931, at *9 (Mass. Apr. 17, 2020) (same); N.Y. Exec. Order No. 202.2 (Mar. 14, 2020) (reducing the statutory signature requirement to 30 percent of normal); H. 681, 2019-2020 Gen. Assemb., Adjourned Sess. (Vt. 2020) (suspending the statutory signature requirement entirely; and *In re: State Question No. 805, Initiative Petition No. 421, Manning v. Rogers*, Case No. 118,719 (Sup. Ct. Okla., March 18, 2020) (tolling the 90-day circulation period for initiative petitions during the declaration of emergency by the Oklahoma Governor until he lifts the declared state of emergency and the Secretary of State calculates a new deadline).

Because the Plaintiffs would suffer irreparable injury if they are not allowed to conduct petition drives for Independent candidates with a reasonable signature requirement for the general election of November 3, 2020, there is no possible constitutionally recognized injury to the Defendant which would be greater than the grave injury to the fundamental rights which would be suffered by the Plaintiffs if they are not allowed a constitutional petition signature requirement, greater petitioning time and a later petitioning deadline. Further, issuance of the proposed preliminary injunction would be in the public interest rather than adverse to the public interest. Particularly, the harm to voters and the public is the damage to "political dialogue and free expression" that is done when candidates and their supporters are unnecessarily restricted from participating in the public discourse. *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, at 594 (6th Cir. 2006). As the Eighth Circuit Court of Appeals has stated in reviewing election laws: "our

primary concern is not the interest of [the] candidate . . . but rather, the interest of the voters who choose to associate together to express their support for [that] candidacy and the views . . . espoused." *Miller v. Moore*, 169 F.3d 1119, 1123 (8th Cir. 1999), quoting *Anderson v. Celebrezze*, 406 U.S. 780, 806 (1983).

Also, the trial court in deciding whether to grant Plaintiffs' request for a preliminary injunction should concentrate primarily on the issue of whether or not the Plaintiffs are likely to prevail on the merits in the instant case. Therefore, the trial court should next look to the standard of review in judging ballot access and election laws which affect Independent candidates and their supporters and potential voters--particularly as same relate to the excessively high and unnecessary number of petition signatures required this year because of the effect of the coronavirus, the unnecessarily early petition signature deadline, the limitation as to petitioning time, the relationship of the aforesaid requirements to the time period in which the major political parties are selecting their candidates, and the date of the general election, as well as the particular facts in the instant case. The unique effect of the coronavirus on petitioning this year is made worse by the 90-day petitioning period. Just as inclement weather and its effect on petitioning has been recognized to call into question the constitutionality of a 90-day petitioning period, see *Libertarian Party of Oklahoma v. Oklahoma State Election Board*, 593 F.Supp. 118, 121-122 (W.D. Okla. 1984); cited with approval in *Citizens to Establish A Reform Party in Arkansas v. Priest*, 970 F.Supp. 690, 698 (E.D. Ark. 1996), also see, *Libertarian Party of Arkansas v. Thurston*, 394 F. Supp. 3d at 894, ¶ 29, 897, ¶ 49 and ¶ 53, a deadly disease such as the coronavirus has an even greater and more damaging effect on petitioning. As the Eighth Circuit said in the 1980 *McLain* case, the ". . . Constitution requires that the access requirements as to both party-backed and independent candidates be reasonable." *McLain v. Meier*, 637 F.2d at 1165. Restrictions on ballot

access "may not go beyond what the state's compelling interests actually require," *McLain v. Meier*, 637 F.2d at 1163, and must be "narrowly drawn to serve a compelling state interest." *Libertarian Party of N.D. v. Jaeger*, 659 F.3d at 693 (quoting *McLain v. Meier*, 851 F.2d at 1049). "In such cases, the State bears the burden of showing that the challenged statute is narrowly drawn to serve the State's compelling interest." *Moore v. Martin*, 854 F.3d at 1026.

As set forth in Plaintiffs' Complaint [ECF No.1], the individual Plaintiffs are not only Arkansas registered voters, but are also Independent candidates for elective office in Arkansas for the November 3, 2020 general election. The individual Plaintiffs are familiar with the negative impact of having such an early petition deadline and short petitioning period of 90 days when interfered with by the coronavirus. Of course, under the 10,000 petition signature requirement for a statewide Independent candidate or the 3% (here 286 signatures) for a State House candidate in Arkansas, many more petition signatures will have to be gathered in order to ensure that there will be sufficient valid petition signatures. See Plaintiffs' Exhibits "1" and "2" hereto, Declaration of Dan Whitfield, ¶ 8, and Declaration of Gary Fults, ¶ 8.

Specifically, what the Plaintiffs are asking for in affirmative relief from the Court is that they be allowed to finish a petition drive with a petition signature requirement which reflects the effect of the coronavirus on the 90-day petitioning time. This remedy is necessary because of the unnecessarily early petition signature deadline, limitation of petitioning time to ninety days, and 3% petition signature requirement based on the total vote of the last gubernatorial election in Arkansas or 10,000 petition signatures for a statewide Independent candidate—which has been successfully complied with only three times by a statewide Independent candidate. *Libertarian Party of Arkansas v. Thurston*, 394 F.Supp.3d at 892, ¶ 15. Testimony as to the Independent petition drive will be presented at the hearing for preliminary injunction. As demonstrated in the

Declarations of Dan Whitfield and Gary Fults attached to Plaintiffs' Motion for Preliminary Injunction (Plaintiffs' Exhibits "1" and "2"), there is harm just in having a petition drive well before the general election in Arkansas. Many of the political issues for the next election are not yet well formed or known. Not only are new political developments constantly occurring, but there is no necessity to have Independent candidate's petitions so early in the political season and collected during a 90-day period. Further, even under good conditions, the evidence will show that Arkansas has never been plagued by an overcrowded ballot—particularly as to Independent candidates. As this Court has previously heard, collecting 10,000 petition signatures is a "challenging endeavor." *Libertarian Party of Arkansas v. Thurston*, 394 F.Supp.3d at 893-894, ¶ 25. However, the Plaintiffs have tried to comply with the law under difficult circumstances and will turn in their petition signatures collected to Defendant's office by noon on May 1, 2020.

## IV. CONCLUSION

> When the State imposes only reasonable and genuinely neutral restrictions on associational rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial intervention. As such restrictions become more severe, however, and particularly where they have discriminatory effects, there is increasing cause for concern that **those in power may be using electoral rules to erect barriers to electoral competition**. In such cases, **applying heightened scrutiny helps to ensure that such limitations are truly justified and that the State's asserted interest are not merely a pretext for exclusionary or anti-competitive restrictions**. [Emphasis added] *Clingman v. Beaver, Id.*

WHEREFORE, premises considered, the Plaintiffs herein pray that this Court, after proper hearing herein, will grant the relief requested in their Complaint filed herein by declaring the ballot access and election laws in question herein unconstitutional—particularly as applied to the current election cycle in 2020, grant Plaintiffs' Motion for Preliminary Injunction forthwith by ordering the number of petitions required for these Independent candidates to have ballot access in Arkansas for the November 3, 2020, general election to be reduced to a reasonable

number under the circumstances or the placement of Plaintiffs on the Arkansas ballot for November 3, 2020, and such other and further relief as the Court finds equitable and just.

Respectfully submitted this 30th day of April, 2020.

>DAN WHITFIELD and GARY FULTS,
>Plaintiffs
>
>JAMES C. LINGER, OBA#5441
>1710 South Boston Avenue
>Tulsa, OK 74119-4810
>(918) 585-2797 Telephone
>(918) 583-8283 Facsimile
>bostonbarristers@tulsacoxmail.com
>
>W. Whitfield Hyman, ABN # 2013-237
>King Law Group
>300 North 6th Street
>Fort Smith, Arkansas 72901
>(479) 782-1125 Telephone
>(479) 316-2252 Facsimile
>william.hyman@gmail.com
>
>*Counsel for Plaintiffs*